**STATE of Missouri, Plaintiff–Respondent,**

v.

**Lendell Ray BARRETT, Defendant–Appellant.**

No. 23390.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 21, 2001.

Motion for Rehearing or Transfer to Supreme Court Denied March 14, 2001.

Application to Transfer Denied April 24, 2001.

G. Kyle Domann, Springfield, Attorney for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Karen L. Kramer, Assistant Attorney General, Attorneys for Respondent.

PARRISH, P.J.

Lendell Ray Barrett (defendant) appeals a conviction for statutory sodomy in the first degree. § 566.062.[1] This court affirms.

For purposes of this court's review, all evidence tending to prove defendant guilty is accepted, together with all reasonable inferences supportive of the verdict. *State v. King*, 964 S.W.2d 480, 486 (Mo.App. 1998). Portions of the record contrary to the verdict are disregarded. *Id.*

The offense of which defendant was found guilty occurred "on or between the 1st day of January, 1998 and the 11th day of February, 1998." The victim was defendant's 13 year-old stepdaughter, J.S.

Defendant married J.S.'s mother when J.S. was six or seven years old. Shortly thereafter, defendant began touching J.S.'s breasts and rubbing her breasts and vagina. On one occasion defendant watched a pornographic movie with J.S. He rubbed J.S.'s breasts and vagina while he watched the movie.

When J.S. was 11 years old, defendant began kissing her and making J.S. kiss him. He began touching her more under her clothing. Defendant began walking into the bathroom when J.S. was taking showers.

Defendant would call for J.S. to come into his bedroom. He would call for her to bring him a towel. When she would try to hand the towel into the room without entering, he would have her come in. He would be lying on his bed unclothed. Defendant would make J.S. rub his penis and put her mouth on his penis.

Defendant would have J.S. put on her mother's lingerie. He would tell J.S. that her chest looked nice. When J.S. had a girlfriend visit, defendant told them they were pretty and that he wanted to get into bed with them.

On February 11, 1998, J.S. and a friend went to a school counselor and told the counselor about defendant's conduct. J.S. had told the friend about the events the evening before. A report was made to police.

As part of the police inquiry, Detective Mark Hall of the Greene County Sheriff's Department contacted J.S.'s mother and told her he would like J.S. to place a call to defendant that could be recorded. J.S.'s mother had no objections. J.S. agreed. They picked a time for the call to be made when J.S.'s mother would be away from the house she shared with defendant. The call was placed from J.S.'s grandmother's house. Detective Hall asked J.S. to attempt to get defendant to discuss what defendant had done to her.

The call was tape-recorded without defendant's knowledge. The tape-recording was introduced in evidence, over defendant's objection, and played for the jury. Copies of what was represented to be a transcript of the tape-recording were provided the jury "so they [could] follow along." Neither the tape-recording nor the transcript was filed with this court.

▮ Defendant's first allegation of trial court error, Point I, asserts the trial court erred by admitting testimony concerning "prior uncharged sexual misconduct between [defendant] and [J.S.]." Defendant argues that the testimony was

---

1. References to statutes are to RSMo 1994.

irrelevant; that any probative value "was outweighed by its prejudicial impact." He contends the only evidence that should have been admitted was evidence of conduct during the interval in which the crime with which he was charged occurred—between January 1, 1998, and February 11, 1998.

Evidence a defendant committed crimes separate and distinct from the crime charged is not admissible to show the defendant is likely guilty of the charged offense because he has a propensity to commit such crimes. *State v. Clover*, 924 S.W.2d 853, 855 (Mo. banc 1996). However, evidence of prior misconduct is admissible if it is logically relevant to the offense charged, i.e., if it has some legitimate tendency to establish the defendant is guilty of the offense for which he is on trial. *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993). *State v. Fouts*, 939 S.W.2d 506, 512–13 (Mo.App.1997). Evidence of other uncharged misconduct has a legitimate tendency to prove the crime for which a defendant is being tried "when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; [or] (5) the identity of the person charged with the commission of the crime on trial." *State v. Sladek*, 835 S.W.2d 308, 311 (Mo. banc 1992), *quoting People v. Molineux*, 168 N.Y. 264, 61 N.E. 286, 294 (1901). Motive to commit a crime involving sexual misconduct may be shown by evidence of prior acts of sexual misconduct toward the victim. *State v. Richardson*, 918 S.W.2d 816, 819 (Mo.App.1996).

■ An additional exception applies when uncharged crimes are part of the circumstances or sequence of events surrounding the offense charged. *State v. Harris*, 870 S.W.2d 798, 810 (Mo. banc),

*cert. denied*, 513 U.S. 953, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). Evidence of uncharged crimes is admissible to present a complete and coherent picture of what transpired. *Harris*, 870 S.W.2d at 810; *see State v. Boulware*, 923 S.W.2d 402, 405 (Mo.App.1996). The evidence about which defendant complains falls within these exceptions. Point I is denied.

■ Point II asserts the trial court erred in admitting evidence of the tape-recorded conversation between defendant and J.S. Defendant argues that no party to the conversation gave consent to the recording as required by § 542.402. He argues, alternatively, that the tape-recording constituted an interrogation of him without being advised of his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Section 542.402 makes the interception of "wire communication" and the use of the content of such interception unlawful under certain circumstances. Section 542.402.2 provides, however:

It is not unlawful under the provisions of sections 542.400 to 542.424:

. . .

(2) For a person acting under law to intercept a wire or oral communication, where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception;

(3) For a person not acting under law to intercept a wire communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act.

These provisions are identical to 18 U.S.C. § 2511(2)(c) and (d).

In *State v. Holt*, 592 S.W.2d 759 (Mo. banc 1980), a defendant contended a minor

was incapable, under federal law, of giving legal consent to record a conversation to which the minor was a party. *Holt* held that federal law did not provide that persons under the age of majority were incapable of consenting to the interception of telephone conversations. *Id.* at 771. *Holt* observed that the minor in question, who was 17 when she consented to the interception of the telephone conversation, had appeared before the trial judge; that the trial judge had the opportunity to ascertain her maturity and capacity to consent. *Holt* noted that the girl's grandparents, whose telephone was the one that had been wiretapped, knew of and did not object to the wiretap. *Holt* held the trial court did not err in admitting the wiretap evidence.

Here, as in *Holt*, the child testified before the trial judge. The trial judge had the opportunity to assess her demeanor before ruling on the admissibility of the tape-recording at trial. As in *Holt*, the telephone where the conversation was intercepted was the victim's grandmother's telephone. The grandmother had consented to the recording of the conversation. This court finds the rationale in *Holt* persuasive and applicable to the facts of this case. The trial court did not err in concluding that § 542.402 had not been violated.

■ Defendant's allegation that his *Miranda* rights were violated is also without merit. As explained in *State v. Norton*, 904 S.W.2d 265 (Mo.App.1995):

> The *Miranda* warning and the rights it explains are designed to protect an individual in the inherently coercive custodial interrogation setting.... *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). A custodial interrogation occurs only when the suspect is formally arrested or is subjected to arrest-like restraints. *State v. Middleton*, 854 S.W.2d 504, 516

(Mo.App.1993). A person who is being asked preliminary, investigatory questions by the police is not in custody for the purpose of requiring a *Miranda* warning. *State v. Crane*, 841 S.W.2d 271, 273 (Mo.App.1992). This principal was first enunciated by the United States Supreme Court in *Miranda:*

> Our decision is not intended to hamper the traditional function of police officers in investigating crime.... General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding.

384 U.S. at 477–78, 86 S.Ct. at 1629. Even if the police become suspicious of the individual they are questioning or the individual becomes the focus of their investigation, a *Miranda* warning is not required prior to questioning unless there is a custodial interrogation. *Middleton*, 854 S.W.2d at 515–16.

*Id.* at 271.

■ Custodial interrogation occurs when an individual who is questioned is under arrest or otherwise restrained of his liberty. *State v. Matheson*, 919 S.W.2d 553, 556 (Mo.App.1996). Defendant's participation in the telephone conversation with J.S. was not a custodial interrogation. Recording a telephone conversation between a defendant and a third party does not involve a "confrontation with governmental authority in the context of a custodial interrogation calling for *Miranda* warnings." *U.S. v. Craig*, 573 F.2d 455, 474 (7th Cir.1977). Point II is denied. The judgment is affirmed.

SHRUM and MONTGOMERY, JJ., concur.